UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AMANDA DEANNE SMITH,

        Plaintiff,

    v.                               ACTION NO. 2:08CV281

OFFICER R.R. RAY, et al.,

        Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered December 31, 2008. The Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331.

## I.  STATEMENT OF THE CASE

### A.  Procedural History

This action was originally filed in Virginia Beach Circuit Court against Officer R.R. Ray and an unknown officer. The incident giving rise to this action was an arrest of plaintiff by Ray on September 21, 2006. The original complaint asserted claims against Ray and the unknown officer for assault, battery, false imprisonment, and malicious prosecution, as well as claims made pursuant to 42 U.S.C. § 1983 for excessive force and unreasonable search and seizure. On June 18, 2008, Ray filed a Notice of Removal, and the action was assigned Action Number 2:08cv281. An amended complaint was filed September 30, 2008.

On September 22, 2008, plaintiff filed another action which was assigned Action Number 2:08cv449.  The second action, which also arose from the events of September 21, 2006, named as defendants the City of Virginia Beach, the City of Virginia Beach Police Department, Chief of Police, Alfred M. Jacocks, Jr., Sergeant Yarbrough, Ray, Tony Bullard, and several unknown uniformed police officers.  An amended complaint was filed September 30, 2008, in which plaintiff does not add defendants, but includes in her description of the unknown defendants certain unknown police supervisors.

Plaintiff subsequently identified several of the unknown officers and one supervisor, and filed a motion to substitute parties. By order filed October 20, 2008, the Court granted plaintiff's motion to substitute parties, adding the following defendants: Kevin Murphy, MPO; Sergeant Rubbo; Sergeant Lynch; Officer Stein; Jay Keatley, MPO; Donald Austin, MPO; Johnny Monts, MPO; and James Hewlett, MPO.  By order filed October 29, 2008, the Court granted plaintiff's motion to consolidate the two actions and Action Number 2:08cv281 was designated as the lead case.

On November 18, 2008, defendants the City of Virginia Beach, the City of Virginia Beach Police Department, Jacocks, Yarbrough, Ray, Murphy, Rubbo, Lynch, Stein, Keatley, Austin, Monts and Hewlett ("Consolidated City Defendants") filed a Motion to Dismiss or in the Alternative for Summary Judgment, along with and a memorandum and evidence in support thereof.  The motion was filed in response to the Amended Complaint filed in Action Number 2:08cv449, and the Second

2

Amended Complaint filed in Action Number 2:08cv281.[1]  In the Second Amended Complaint plaintiff asserts the following claims: assault and battery against defendant Bullard; assault, battery and false imprisonment against defendants Murphy, Rubbo, Lynch, Stein, Keatley, Austin, Monts and Hewlett; § 1983 bystander liability claim against defendant Ray; § 1983 bystander liability claim against defendants Murphy, Rubbo, Lynch, Stein, Keatley, Austin, Monts and Hewlett; § 1983 claim against defendant Yarbrough for allegedly conducting a flawed investigation; § 1983 supervisory liability claim against defendants Jacocks and Rubbo; § 1983 claims against the City for the actions of defendant Bullard, and for its allegedly unconstitutional policies. Plaintiff additionally seeks punitive damages.

On December 10, 2008, the Court entered an Agreed Order for Leave to File Second Amended Complaint and to Extend Deadline for Response to Consolidated Defendants' Motion to Dismiss or for Summary Judgment.  Pursuant to that order, plaintiff's Second Amended Complaint was filed.  Plaintiff's response to the Consolidated City Defendants' Motion to Dismiss or for Summary Judgment was filed December 11, 2008. A reply was filed on December 19, 2008.

By order filed December 12, 2008, the Court reiterated that plaintiff's Second Amended Complaint is the sole active complaint in this matter, and that the Consolidated City Defendants' Motion to Dismiss or for Summary Judgment is deemed filed in response to the Second Amended Complaint.  In that order, the Court dismissed without prejudice Action

---

[1]As the Consolidated City Defendants note in their motion, the Second Amended Complaint filed in Action Number 2:08cv281 appears identical to the Amended Complaint filed in Action Number 2:08cv449, except that it includes as defendants those individuals substituted for the previously unknown officers.

Number 2:08cv449, and directed that all further submissions be filed under Action Number 2:08cv281.  By order filed January 14, 2008, the Court granted plaintiff's motion to voluntarily dismiss defendants Murphy, Austin, and the City of Virginia Beach Police Department.  Such defendants were dismissed with prejudice.

On December 22, 2008, plaintiff filed a Motion for Reconsideration in Part and/or Clarification of the Court's December 12, 2008 Order.  In the motion, plaintiff's counsel took the position that plaintiff intended to merge the Second Amended Complaint with the original complaint.[2]  The motion was subsequently denied by order filed January 15, 2009.

The Consolidated City Defendants' Motion to Dismiss or for Summary Judgment was referred to the undersigned by order filed December 31, 2008.  A hearing on such motion was held January 23, 2009.  At that hearing, counsel for plaintiff moved to dismiss defendants Yarbrough and Jacocks as defendants to this action.  Plaintiff subsequently filed a motion to voluntarily dismiss such defendants.[3]  All parties have had

---

[2]As stated previously, plaintiff alleges that she was arrested without legal justification and that defendant Ray used excessive force in the course of that arrest.  Plaintiff additionally alleges that a second unknown officer sexually assaulted her in a pat-down search following her arrest.  Although the original complaint asserted claims against defendant Ray and the unknown officer for their alleged tortious and/or unconstitutional conduct, the Second Amended Complaint does not include such claims.  Instead, the Second Amended Complaint asserts only claims of indirect liability.

[3]Such dismissal, if granted, would dispose of plaintiff's "flawed investigation" claim against Yarbrough and supervisory liability claim against Jacocks; therefore such claims are not addressed in the instant Report and Recommendation.  The Court notes, however, that neither claim would survive summary judgment.  Specifically, plaintiff's claim that Sergeant Yarbrough violated her right to due process by conducting a flawed and incomplete investigation is clearly without merit.  A victim does not have a federal right to have the state investigate or prosecute a crime and/or a cover-up.  Roberts v. Murphy, 684 F. Supp. 759, 762 (D. Mass. 1988); Johnson v. Craft, 673 F. Supp. 191, 193 (S.D. Miss. 1987); Sellner v. Panagoulis, 565 F. Supp. 238, 251-252 (D. Md. 1982), aff'd, 796 F.2d 474 (4th Cir. 1986), cert. denied, 479 U.S. 1069

sufficient opportunity to address the issues raised by plaintiff in the Second Amended Complaint. Accordingly, the Consolidated City Defendants' motion for summary judgment is now ripe for judicial review.

## B.   Factual Allegations

As pleaded in the Second Amended Complaint, plaintiff alleges that, on September 21, 2006, she was a guest at a friend's home on Marlwood Way in Virginia Beach. At approximately 5:00 p.m. plaintiff heard a knock on the door. She opened the door and, standing just outside, were Ray and a civilian who was later identified as defendant Bullard. The men were looking for Bullard's runaway stepson, Timmy. Ray asked plaintiff to step outside. She complied and Ray proceeded to ask her some identifying questions, which plaintiff answered. Ray next asked if Timmy was inside the home, and plaintiff said he was not. Ray asked if Joel was in the house, and plaintiff said that he was.

Plaintiff told the men to "hold on" and turned and opened the screen door. She alleges that she was intending to get Joel. However, Ray reached over her right shoulder and slammed the screen door shut. Plaintiff was startled, stepped backward and fell off the front stoop. Ray attempted to grab plaintiff's arm, but plaintiff pulled away and asked him what he was doing. Ray then grabbed plaintiff's right arm above the elbow and attempted to push her to the ground. Ray indicated that Bullard should assist him. Bullard kicked plaintiff, forcing her legs out from under her, and she was flung to the ground, landing on her stomach.

Ray knelt on top of plaintiff's back, and twisted her right

---

(1987). Further, plaintiff has failed to introduce evidence supporting a supervisory liability claim against Jacocks. See infra Part II(B)(1)(b).

arm up toward her shoulder in such a way that plaintiff could look to her right and see her fingers up by her face.  Plaintiff attempted to push herself up with her left hand in order to tell Ray that she could not breathe.  Ray ordered plaintiff to put her arms to her sides, to which plaintiff responded that she was unable to do so.  Ray struck plaintiff in her right side three times, yelling at her to put her arms at her sides.  Plaintiff and Ray went back and forth, all the while Ray continued to lean on plaintiff's back.

Ray handcuffed plaintiff's right wrist, then grabbed her left wrist and pulled her left arm around to handcuff the left wrist.  One or more of the other officers on the scene assisted Ray in handcuffing plaintiff.  Ray stood up and pulled plaintiff up by her hair with such force that some of her hair was ripped from her scalp.  Ray led plaintiff to his marked police car, which was parked in front of the residence.

At the car, Ray conducted a pat-down search and asked plaintiff if she had any weapons, to which plaintiff replied that she had a pocketknife.  Ray indicated that he did not find the pocketknife and plaintiff said that, perhaps, she left it in the residence.  Ray left plaintiff at the car with one or more of the responding officers and walked toward the residence.  One of the other officers then performed a second pat-down search, during which, according to plaintiff, he fondled her breasts and penetrated her genitals.  Plaintiff screamed that she was being molested.  Plaintiff alleges that Ray and the other officers witnessed the second pat-down and/or heard plaintiff's cries for help, but did not respond.

Ray returned and told plaintiff that he found the pocketknife, as well as plaintiff's keys and cell phone near where she had been thrown

to the ground.  Plaintiff repeatedly asked why she was in trouble, but Ray did not respond.  Plaintiff was placed into a police car and driven around the corner, where she remained while a search of the residence was conducted.  Plaintiff alleges that the officers did not have a search warrant.  During this time, plaintiff continued to ask through the car window why she was in custody, but the officers continued to ignore her. Eventually, Ray returned to the car and drove away with plaintiff.  At that time, Ray informed plaintiff that she was being charged with unlawfully carrying a concealed weapon and obstruction of justice. Plaintiff alleges that Ray neither informed plaintiff that she was under investigative detention nor advised her of her <u>Miranda</u> rights (or, if he did, it was not until after he began questioning plaintiff).

Plaintiff was taken to the police station where she was processed and then placed into a cell.  Plaintiff was allowed to speak to a nurse, who examined her, but plaintiff did not receive any additional medical treatment.  Upon her release on bail, plaintiff requested a copy of the nurse's examination report, but was told her attorney would have to request it.  Plaintiff sought treatment for pain in both her shoulder and side.  Plaintiff alleges that she continues to suffer "debilitating" pain.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion for Summary Judgment Standard

The Consolidated City Defendants styled their motion as a Motion to Dismiss or for Summary Judgment; however, the parties, in

submitting evidence, are clearly treating the motion as one for summary judgment. Accordingly, the Court will likewise treat the Consolidated City Defendants' motion as one for summary judgment.

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001).

The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. Celotex Corp.,

477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993).  Failure by the non-moving party to rebut the motion with such evidence on his behalf will result in summary judgment when appropriate.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. 477 U.S. at 322.

Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact.  See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004).  Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party.  See Anderson, 477 U.S. at 252.

### B.  Consolidated City Defendants' Motion for Summary Judgment

### 1. Claims Pursuant to 42 U.S.C. § 1983

### a.  Bystander Liability

In the Second Amended Complaint, plaintiff asserts "bystander liability" claims pursuant to 42 U.S.C. § 1983 against defendants Ray,

Rubbo, Lynch, Stein, Keatley, Monts and Hewlett. Specifically, plaintiff alleges that such defendants knew or should have known that Bullard, Ray and/or one or more of the other officers violated plaintiff's Fourth Amendment rights by: 1) unlawfully arresting plaintiff without a warrant and without probable cause; 2) using excessive and/or unwarranted force in the course of arresting plaintiff; and 3) conducting an unreasonable pat-down search, involving behavior that constitutes sexual assault.[4]

A law enforcement officer may be liable under § 1983 on a theory of bystander liability if he: 1) knows that a fellow officer is violating an individual's constitutional rights; 2) has a reasonable opportunity to prevent the harm; and 3) chooses not to act. <u>Randall v. Prince George's County</u>, 302 F.3d 188, 204 (4th Cir. 2002).[5]

The first component of a bystander liability claim therefore requires that there both be a constitutional violation[6] and that the officers had knowledge of that violation. As stated above, plaintiff alleges that defendant Ray and an unknown officer violated her Fourth Amendment right to be free from unreasonable seizures. The "ultimate touchstone" of Fourth Amendment jurisprudence is reasonableness. <u>Brigham</u>

---

[4]In her response to defendants' motion, plaintiff also contends that the search of the residence violated the Fourth Amendment; however, this was not pleaded in the Second Amended Complaint.

[5]As a result of the frustrating manner in which plaintiff's counsel has chosen to plead the present case, the Second Amended Complaint contains no § 1983 claim against either defendant alleged to have directly violated plaintiff's constitutional rights. A curious result, however, is that, despite the fact that there are no § 1983 claims alleging a Fourth Amendment violation against defendant Ray or the unknown officer, the Court, in its evaluation of plaintiff's § 1983 claims of indirect liability against the other defendants, must address the alleged affirmative misconduct of defendant Ray and the unknown officer.

[6]The Consolidated City Defendants also assert the defense of qualified immunity. As discussed <u>infra</u>, the determination as to whether a defendant is entitled to qualified immunity also requires that the Court determine whether the defendant's actions violated the injured party's constitutional rights.

10

City v. Stuart, 547 U.S. 398, 404 (2006).  The "Fourth Amendment does not proscribe all state-initiated . . . seizures; it merely proscribes those which are unreasonable."  Florida v. Jimeno, 500 U.S. 248, 250 (1991).  "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'"  Id. at 404 (quoting Scott v. United States, 436 U.S. 128 (1978) (emphasis added)).

### i.  Initial Detention and Arrest

As stated above, plaintiff first seeks to hold the responding officers liable for failing to intervene during an alleged unlawful initial detention.

> An investigative detention or stop is constitutional if supported 'by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' Reid v. Georgia, 448 U.S. 438, 440 (1980) (per curiam).  Thus, an officer who stops and detains a person for investigative questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968).  While such a detention does not require probable cause, it does require something more than an 'inchoate and unparticularized suspicion or 'hunch.'

United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997).

With regard to the initial detention of plaintiff, defendants contend that Ray had a reasonable suspicion that plaintiff was engaged in criminal activity and, therefore, his detention of plaintiff was not constitutionally violative.  To support this contention, defendant Ray has submitted his own affidavit.  On the night in question, defendant Ray was dispatched to a residence on Adler Avenue to assist a private citizen, defendant Tony F. Bullard, in the search for his runaway

11

stepson, Timmy.  (Ray Aff. at ¶ 3).  The dispatch report indicated that Timmy was known to be involved in drugs and may be violent.  Id.  Once at the Adler Avenue address, Ray and Bullard received information that Timmy was currently at a residence located on Marlwood Way.  Ray was further advised that an adult identified as Joel resided at this address. Id. at ¶ 4.  The men proceeded to the Marlwood residence and, upon arrival, the viewed several male juveniles through a window;  Bullard told Ray that one of the boys appeared to be Timmy.  Id. at ¶ 6.

Ray knocked on the front door and heard scurrying sounds coming from inside.  Approximately one minute later, plaintiff answered the door.  According to Ray, "[p]laintiff opened the door, abruptly stepped outside, and immediately closed the door behind her in such a manner as to prevent [Ray] from observing the inside of the residence." Id. at ¶ 7.  Ray asked plaintiff several identifying questions that she answered; however, she "stared blankly" at Ray when he questioned her about the whereabouts of both Timmy and Joel.  (Ray Aff. at ¶¶ 8-9). According to Ray:

> [t]hroughout the encounter at the front door, Plaintiff's eyes were unfocused, her pupils were extremely dilated, and she continued to stare blankly at me.  Plaintiff appeared to me to be 'out of it' and as though she did not have her senses about her.  Plaintiff was also unkempt and disheveled in appearance. Based on my training and experience, and the demeanor and appearance of Plaintiff, it appeared to me that Plaintiff was under the influence of an intoxicant.

Id. at ¶ 12.

Ray asked again about Joel, and plaintiff turned toward the door.  Ray placed his hand on the door and told plaintiff she was under investigative detention and that he needed to ask her additional

questions about Timmy because he had information that Timmy was inside the residence. Id. at ¶¶ 13-14. Plaintiff attempted to run away, id. at ¶ 15, so Ray placed her in a police escort hold and advised her again that she was under investigative detention, id. at ¶ 17. According to Ray, he was concerned that plaintiff was harboring a runaway, and contributing to the delinquency of a minor. Ray also believed plaintiff was intoxicated and was therefore concerned for the safety and welfare of the juveniles inside the residence, as well as plaintiff who had attempted to run into the street. Id. at ¶ 16. Because Ray was unable to secure plaintiff's left arm and hand, he believed she was in possession of a weapon and, therefore, called for "priority officer assistance." Id. at ¶ 23. According to several of the responding officers, when they arrived on the scene sometime later, plaintiff appeared to be under the influence of an intoxicant. (Hewlett Aff. at ¶ 9; Rubbo Aff. at ¶ 6; Keatley Aff. at ¶ 15).

Not surprisingly, plaintiff's affidavit contains a different version of the events. Plaintiff states that she answered Ray's questions "clearly, promptly and cogently," and that she was not intoxicated. (Smith Aff. at ¶ 4(d)). Notably, however, plaintiff does not deny that she consumed alcohol, just that she was not intoxicated. Id. at ¶¶ 5-6. Plaintiff does not dispute the officers' description of her, but states that she did not "use excessive amounts of alcohol" or any illicit or prescription drugs. Id. at ¶ 7. Furthermore, plaintiff admits that she turned and tried to go back inside the residence when Ray inquired about Joel. Id. at ¶ 4(g). Although plaintiff denies that she attempted to run away, in the interview conducted in the course of the internal investigation which plaintiff incorporates into her affidavit,

13

she admits that she "jumped back" when Ray placed his hand on the door and fell to the side of the front stoop.  Id. at Attachment.[7]  Further, the evidence shows that Ray was given information that Timmy was inside the residence and, in fact, his stepfather had identified one of the juveniles inside as Timmy.

After viewing the entire record in the light most favorable to plaintiff, it is apparent that no reasonable juror could find that defendant Ray did not did not possess the requisite articulable suspicion for an investigative detention.  Ray had information that Timmy was inside the home, plaintiff appeared to be intoxicated and, although she denies attempting to run away, she does not deny that she stepped off the front stoop or that she pulled her arm away twice, actions which Ray reasonably perceived as plaintiff attempting to flee.

Regarding the subsequent arrest for obstruction of justice and possession of a concealed weapon, no material facts are in dispute.  Ray states that he saw several juveniles in the home and that the father of the runaway indicated that one of the juveniles looked like Timmy.  In addition, plaintiff admits that she pulled her arm away from Ray, "tried avoiding him at all costs" and called him a pejorative.  Id. at ¶ 4(l).  Further, she admits to possessing the pocket knife.  Id. at ¶ 4(q).  Clearly, defendant had probable cause to arrest plaintiff and, therefore, his actions did not violate the Fourth Amendment.  See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor

---

[7]Plaintiff has also submitted the interview of Tony Bullard.  While not properly authenticated and, therefore not proper summary judgment evidence, the Court notes that Bullard's statement corroborates Ray's testimony.  Specifically, that plaintiff was incoherent and talked like she "was going to run."

criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Even if the Court were to find that Ray's conduct was constitutionally violative during the detention and arrest of plaintiff, plaintiff has failed to demonstrate that the responding officers were aware of Ray's conduct–a requirement of bystander liability claim.

> The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible. and cannot be held liable for that violation under the bystander liability theory.

Randall, 302 F.3d at 204 n.24.

Defendants have submitted evidence demonstrating that none of the responding officers were present during the time leading up to the arrest of plaintiff.  (Hewlett Aff. at ¶¶ 7-8; Monts Aff. at ¶ 5; Stein Aff. at ¶ 4; Rubbo Aff. at ¶ 5; Lynch Aff. at ¶ 6; Keatley Aff. at ¶ 7).  Accordingly, even if the initial detention and arrest of plaintiff were unlawful, none of the officers were present and, therefore, cannot possibly have had knowledge of Ray's alleged misconduct.

## ii.  Use of Force

Plaintiff next alleges that Ray used excessive force in arresting her and that the responding officers are liable for defendant Ray's conduct.  Upon review of the evidence submitted by defendants, however, it appears that defendant Keatley was the only other officer who witnessed the physical altercation between plaintiff and Ray.  In his affidavit, Keatley states that he was the first officer to arrive on the scene on the night in question.  (Keatley Aff. at ¶ 5).  All of the other

15

responding officers arrived after plaintiff was already in custody. (Hewlett Aff. at ¶¶ 7-8; Monts Aff. at ¶ 5; Stein Aff. at ¶ 4; Rubbo Aff. at ¶ 5; Lynch Aff. at ¶ 6).  In plaintiff's own affidavit, she states that the second officer did not arrive until "right about the time . . . I got cuffed." (Smith Aff. at Attachment).  Accordingly, plaintiff's bystander liability claim regarding the force used in the course of her arrest fails as to defendants Rubbo, Lynch, Stein, Monts and Hewlett.

Keatley therefore witnessed some part of the altercation between plaintiff and defendant Ray.  However, the first component of a bystander liability claim also requires that there be some constitutional violation.  "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Conner, 490 U.S. 386, 395 (1989)).  Therefore, in evaluating whether excessive force was used in the course of an arrest, "the question is 'whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'" Vathekan v. Prince George's County, 154 F.3d 173, 179 (4th Cir. 1998) (quoting Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)).  In determining whether the force used was objectively reasonable, a court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." Id. "The task of [a] court is to put itself into the shoes of the officers at the time the actions took place and to ask whether the actions taken by the officers were objectively unreasonable." Altman v. City of High Point, N.C., 330 F.3d 194, 205 (4th Cir. 2003). If not, there has been no constitutional violation.

In his affidavit, Ray testifies that plaintiff resisted his attempts to take her into custody by repeatedly hitting and kicking defendant, as well as shouting profanities and pejoratives at him. (Ray Aff. at ¶ 18). During the course of the struggle that ensued, the two fell to the ground, where plaintiff continued to resist. Id. at ¶ 19. Plaintiff's left arm was under her body and she refused Ray's instructions to remove her hand from underneath her body. Id. at ¶ 20. Believing that plaintiff might be in possession of a weapon, Ray used compliance techniques, including striking plaintiff in her lower torso approximately three times. Plaintiff continued to resist, so Ray called for assistance. Id. at ¶ 21. Once plaintiff was handcuffed, Ray pulled plaintiff to her feet by rolling her onto her side and instructing her to put her knees up against her chest before lifting her up. Id. at ¶ 25. Ray denies that he pulled plaintiff up by grabbing her hair. Id. at ¶ 26. According to Keatley:

> When I arrived at Ray's location, I observed that Ray was lying across the back of [plaintiff], securing her to the ground on her stomach. Plaintiff was screaming incoherently and flailing her hands and body in resistance to Ray's efforts to secure her.

17

(Keatley Aff. at ¶ 7).[8]  Other officers who responded to the scene have submitted affidavits attesting that plaintiff was enraged, belligerent, and screaming when they observed her after her arrest.  (Hewlett Aff. at ¶ 9; Rubbo Aff. at ¶ 6; Monts Aff. at ¶ 7).

After viewing the entire record in the light most favorable to plaintiff, it is apparent that no reasonable juror could find that Ray used excessive force in arresting plaintiff.  In the Second Amended Complaint and in her affidavit, plaintiff admits that she actively resisted arrest by trying to avoid Ray at all costs, that she called him names, that her left arm was underneath her body, and that she was in possession of a knife.  Ray has testified that plaintiff resisted arrest and, in the course of doing so, struck him numerous times.  Ray admits that, during the struggle, he used compliance techniques.  Clearly, such force was not excessive given the fact that plaintiff was resisting arrest and posed an immediate threat to Ray's safety.  Plaintiff has failed to establish that Ray's conduct was constitutionally violative.  Therefore, it follows that Keatley cannot be held liable on a theory of bystander liability.

### iii.  Sexual Assault

"Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes 'unreasonable intrusion on one's bodily integrity' and other harassing and abusive behavior that rises to the level of 'unreasonable seizure.'" Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir. 2001) (quoting Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2001)).  Although the Supreme

---

[8]Again, Bullard's statement corroborates Ray and Keatley's testimony as to plaintiff's demeanor and behavior.

18

Court in <u>Graham</u> stated that assessing police action during a seizure involves the balancing of the intrusion on the individuals Fourth Amendment rights against the countervailing governmental interests at stake, "there can be no 'countervailing governmental interest' to justify sexual misconduct." <u>Id.</u> at 880.

In the Second Amended Complaint, plaintiff alleges that after arresting her, Ray turned plaintiff over to another officer, who performed a second pat-down search, during which, according to plaintiff, he fondled her breasts and penetrated her genitals. Assuming the truth of plaintiff's allegations, as the Court must, such actions could support a finding of a Fourth Amendment violation. However, as with her other claims, defendants have submitted affidavits stating that they did not witness the assault. (Ray Aff. at ¶¶ 36-37; Hewlett Aff. at ¶¶ 15-16; Monts Aff. at ¶¶ 12-13; Stein Aff. at ¶ 12; Rubbo Aff. at ¶¶ 12-13; Lynch Aff. at ¶ 11-12; Keatley Aff. at ¶ 21). In addition, while several of the officers testify that they observed that plaintiff was hysterical, screaming, shouting profanities and generally out of control while in the back of the police vehicle, the officers testify that they did not hear plaintiff complain that she had been assaulted. (Ray Aff. at ¶ 38; Stein Aff. at ¶ 15; Keatley Aff. at 24; Monts Aff. at ¶ 15; Rubbo Aff. at ¶ 15; Hewlett Aff. at ¶ 18; Lynch Aff. at ¶ 14).

### b.  Supervisory Liability

Plaintiff asserts a § 1983 claim of supervisory liability against defendant Rubbo. Section 1983 liability is personal in nature, and the doctrine of <u>respondeat superior</u> is generally inapplicable to actions brought under the statute. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978); <u>Lopez v. Robinson</u>, 914 F.2d 486, 494 (4th Cir.

19

1990).  To establish liability on the part of a supervisor who is not
personally involved, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive
> knowledge that his subordinate was engaged in
> conduct that posed 'a pervasive and unreasonable
> risk' of constitutional injury to citizens like the
> plaintiff; (2) that the supervisor's response to
> that knowledge was so inadequate as to show
> 'deliberate indifference to or tacit authorization
> of the alleged offensive practices,'; and (3) that
> there was an 'affirmative causal link' between the
> supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)(citations omitted).  The
first prong requires that the subordinates' conduct be pervasive, which
means that the "conduct is widespread, or at least has been used on
several different occasions."   Id.   Further, the second prong cannot
ordinarily be satisfied by pointing to an isolated incident.   Instead,
deliberate indifference "may be satisfied by showing '[a] supervisor's
continued inaction in the face of documented widespread abuses.'"
Randall, 302 F.3d at 206 (quoting Slakan v. Porter, 737 F.2d 368, 373
(4th Cir. 1984)).

     Implicit in the supervisory liability theory is the
requirement of some constitutionally impermissible conduct on the part
of the subordinates.  As stated above, plaintiff has failed to establish
a constitutional violation as to most of her claims.  However, even
assuming that she has established such a violation, plaintiff has failed
to demonstrate that the conduct at issue was pervasive or widespread.
Instead, she bases her claim on the alleged multiple unconstitutional
actions that occurred on the night in question which is, essentially, an
isolated incident.  In her response to the Consolidated City Defendants'
motion, she cites to prior complaints made against Ray; however, she

20

admits that such complaints were investigated and none were listed as
"founded." (Doc. #50 at 38). To the extent the claim against Rubbo is
based on Yarbrough's alleged failure to conduct a proper investigation,
as stated previously, a victim does not have a federal right to have the
state investigate or prosecute a crime and/or a cover-up. See supra note
3.

Further, plaintiff has introduced no evidence of any actual or
constructive knowledge on the part of Rubbo, specifically that Rubbo had
knowledge of the propensity for unlawful behavior and chose not to act.
See Randall, 302 F.3d at 207 (holding that the evidence was insufficient
to sustain the verdict against a supervisor when there was no evidence
that the supervisor "knew about any propensity for unlawful action by his
subordinates [or] that he had an opportunity to prevent recurrences").

### c. Municipal Liability

In the Second Amended Complaint, plaintiff asserts § 1983
claims against the City, seeking to hold it liable for the alleged
unconstitutional actions of defendants Bullard and Ray.

As an initial matter, it is unclear how the City could be
liable for the alleged unconstitutional actions of defendant Bullard, who
is a private citizen and not a state actor. Regarding plaintiff's claim
that the City is liable for its alleged unconstitutional policy,
practice, custom and procedure, a municipality may not be held liable
under § 1983 for employing a tortfeasor. Bd. of County Comm'rs v. Brown,
520 U.S. 397, 403 (1997). For a municipality to be liable under § 1983,
there must be: (1) a policymaker; (2) an official policy; and (3) a
violation of constitutional rights whose "moving force" is the policy or
custom. Monell, 436 U.S. at 694; Piotrowski v. City of Houston, 237 F.3d

567, 578 (5th Cir.), <u>cert. denied</u>, 534 U.S. 820 (2001).  These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.  <u>Id.</u>  "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  <u>Piotrowski</u>, 237 F.3d at 578.

An "official policy" may be either a written policy or "a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  <u>Lawson v. Dallas County</u>, 286 F.3d 257, 263 (5th Cir. 2002) (quoting <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right.  <u>Id.</u>  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  <u>Brown</u>, 520 U.S. at 404.

Regarding Ray, plaintiff alleges that, prior to the incident at issue in this action, Ray used excessive force in the course of detaining a Kerri Caldwll, plaintiff's former boyfriend's sister. Plaintiff alleges that the City "had prior knowledge of the police use of excessive force and assaultive conduct towards detainees and arrestees

such as [plaintiff]."   (Docket No. 46 at 32).   However, as stated previously, plaintiff admits that no complaints against Ray were determined to be founded.  Further, at the hearing, counsel for plaintiff indicated that he was seeking to hold the City liable for one bad act on the part of Ray.  Clearly, one bad act, if it occurred, does not equate a practice or custom that would render the City liable.

### d.  Qualified Immunity

In their motion, the Consolidated City Defendants assert the defense of qualified immunity.  In determining whether a defendant is entitled to qualified immunity, the courts have developed a two-part test.  Saucier v. Katz, 533 U.S. 194, 200 (2001); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004).  First, the court must determine whether the facts alleged by the injured party show that the government official's actions violated the injured party's constitutional rights.  Saucier, 533 U.S. at 201; Parrish, 372 F.3d at 301.  If the court concludes that no constitutional right was violated, there is no need to continue through the remainder of the inquiry into qualified immunity.  Saucier, 533 U.S. at 201.  Only if the alleged conduct does violate a constitutional right does the court proceed to the second step. Id.  The second step involves determining, whether the right was clearly established at the time of the alleged conduct.  Id.; Parrish, 372 F.3d at 301.  Recently, the Supreme Court held that the two-step sequence required in Saucier is not mandatory and that courts may exercise discretion in deciding which prong to address first.  Pearson v. Callahan, ___ U.S. ___, 2009 WL 128768, at *9 (2009).

As discussed above, plaintiff has failed to establish that the Consolidated City Defendants' conduct was constitutionally violative.

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201.

### e.  State Law Claims

In the Second Amended Complaint, plaintiff asserts state law claims of assault, battery and false imprisonment against the other officers.  A state law claim is not the equivalent of a claim under federal law or the Constitution and is not cognizable in federal court, absent the exercise of supplemental jurisdiction by a court pursuant to 28 U.S.C. § 1367.  As plaintiff has failed to demonstrate a constitutional violation, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the Consolidated City Defendants' motion for summary judgment be granted as to plaintiff's § 1983 claims.  It is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. Furthermore, at the January 23, 2009, hearing, the parties indicated that the issues raised in plaintiff's motion filed November 21, 2008, have been resolved and that the motion is moot.  Therefore, it is recommended that the Court decline to rule on such motion.

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations

24

within ten days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


_____/s/_____
**James E. Bradberry**
**United States Magistrate Judge**


**Norfolk, Virginia**
**February 13, 2009**

25

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

        Darren M. Hart, Esq.
        Hart & Associates PC
        10045 Midlothian Turnpike
        Suite 201
        Richmond, VA 23235

        Andrew B. Pittman, Esq.
        Troutman Sanders LLP
        222 Central Park Ave.
        Suite 2000
        Virginia Beach, VA 23462

        Leslie L. Lilley, Esq.
        Mark D. Stiles, Esq.
        Christopher S. Boynton, Esq.
        Office of the City Attorney
        Municipal Center
        Virginia Beach, VA 23456

        James A. Cales, III, Esq.
        Furniss Davis Rashkind & Saunders PC
        6160 Kempsville Circle
        P.O. Box 12525
        Norfolk, VA 23451


                        Fernando Galindo, Clerk


                        By _____
                                Deputy Clerk

                        _____, 2009